UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY TUCKER,

        Plaintiff,

    v.                              Case No. 18-cv-1013-pp

DR. COX, J. PERTTU,
and TOBIAS TURON,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING
PLAINTIFF'S COMPLAINT (DKT. NO. 1), DENYING PLAINTIFF'S MOTION
TO APPOINT COUNSEL (DKT. NO. 11) AND DENYING PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT (DKT. NO. 14)**

---

Plaintiff Gregory Tucker, a state prisoner who is representing himself,
filed a complaint under 42 U.S.C. §1983. Tucker alleges that the defendants
violated his civil rights by providing him inadequate medical care and delaying
his medical treatment. Dkt. No. 1. He also has filed a motion for leave to
proceed without prepaying the filing fee, dkt. no. 2, a motion to appoint
counsel, dkt. no. 11, and a motion for default judgment, dkt. no. 14.

## I.    Motion to Proceed without Prepaying the Filing Fee

The Prison Litigation Reform Act applies to this case because the plaintiff
was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows
a court to let an incarcerated plaintiff proceed with his lawsuit without
prepaying the civil case filing fee as long as he meets certain conditions. One of

those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee the court may allow him to pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On July 3, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $13.49. Dkt. No. 7. The court received that fee on July 16, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. The plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening of the Complaint

### A.     Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may dismiss a claim as frivolous where it is

2

based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. <u>Neitzke</u>, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in <u>Twombly</u>, by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. <u>Id</u>. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of

the United States; and 2) whoever deprived him of that right was acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)); <u>see also</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

B.  <u>The Facts in the Complaint</u>

1.  *Medical care*

The plaintiff alleges that on December 21, 2017, he got an emergency pass to see the dentist; he saw Dr. Turon, who told the plaintiff "that he may have a fractured tooth." Dkt. No. 1 at 2. Turon prescribed the plaintiff "antibiotics and Tylenol with no further treatment." <u>Id.</u>

Three days later, on December 24, 2017, the plaintiff saw a nurse at the Health Services Unit ("HSU"), complaining that "Tylenol and Naproxen was not effective for the pain." <u>Id.</u> The plaintiff asked to go to the emergency room. <u>Id.</u> The HSU staff contacted Dr. Cox and told him that the plaintiff continued to complain of pain, even though he was taking Tylenol and Naproxen. <u>Id.</u> at 2-3. The plaintiff says that Cox "ignored" his request to be taken to the ER, and his pain, instead telling the nurse to tell the plaintiff to continue to "tak[e] pills until seen by [a] dentist." <u>Id.</u> at 3.

On January 2, 2018, after what the plaintiff describes as twelve days of "severe pain," the plaintiff saw a dentist and had his fractured tooth repaired. Id. On January 26, 2018, the plaintiff was seen by Dr. Mark Domrois (not a defendant) to have the tooth located behind the fractured tooth pulled because "it contained an abscess." Id.

### 2. *Inmate Grievance*

The plaintiff states that on December 27, 2017, he filed an inmate grievance regarding the lack of medical care he had received on December 24, 2017. Id. He says that, relying on the dental hygienist's notes, Inmate Complaint Examiner J. Perttu dismissed the complaint on January 5, 2018. Id. The plaintiff asserts that Perttu found that the staff had not ignored his complaints of pain. Id. The plaintiff appealed on January 28, 2018, but the appeal was dismissed on February 7, 2018. Id.

### 3. *Federal Complaint*

The court received the plaintiff's federal complaint on July 2, 2018. Dkt. No. 1. He asks the court to issue an order "declaring" that the defendants acted in violation of the Constitution. Id. at 5. He requests an injunction "compelling the defendants to provide immediate treatment to an inmate when a health issue is identified and to properly address issues in inmate complaints." Id. He also requests $100,000 "as compensatory damages for the pain and suffer" he was "forced to endure." Id.

C.    <u>Analysis</u>

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" <u>Arnett v. Webster</u>, 658 F.3d 742, 750 (7th Cir. 2011) (quoting <u>Rodriguez v. Plymouth Ambulance Srv.</u>, 577 F.3d 816, 828 (7th Cir. 2009)). If prison officials are "deliberately indifferent to prisoners' serious medical needs," they violate the Constitution. <u>Id.</u> A claim based on deficient medical care must demonstrate 1) an objectively serious medical condition and 2) an official's deliberate indifference to that condition. <u>Id.</u>

An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff alleges that he had a fractured tooth which caused him significant dental pain that required treatment with medication, repair of the fractured tooth and removal of another tooth. At this stage, the court finds that plaintiff has sufficiently alleged that he suffered from an objectively serious medical condition.

Next, the court must determine whether the plaintiff has alleged sufficient facts to allow him to proceed on a claim that any of the three defendants—Turon, Cox or Perttu—were deliberately indifferent to that serious medical need. To decide that, the court considers whether the prison official "[knew] of a substantial risk of harm to an inmate," and whether the official

6

"either act[ed] or fail[ed] to act in disregard of that risk." <u>Greeno</u>, 414 F.3d at 751. If a plaintiff has received some medical care for his health care needs, he must show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition. <u>Snipes v. DeTella</u>, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation omitted). "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." <u>Edwards v. Snyder</u>, 478 F.3d 827, 831 (7th Cir. 2007) (citing <u>Estelle</u>, 429 U.S. at 107).

The plaintiff alleges that when he saw Turon on the emergency medical pass, Turon told the plaintiff that he "may" have a fractured tooth. The plaintiff says that although Turon prescribed Tylenol and antibiotics as treatment, he did nothing else. Some twelve days later, the plaintiff saw the dentist who repaired the fractured tooth. The facts are thin—the plaintiff doesn't explain whether *Turon* had reason to know that the Tylenol wasn't controlling his pain, or whether he had reason to know that the plaintiff had to wait twelve days to have the tooth repaired, or that the plaintiff was in pain that whole time. But at the screening stage, the court concludes that the plaintiff has stated enough to allow him to proceed on a deliberate indifference claim against Turon.

The plaintiff asserts that Cox ignored the plaintiff's claim of continued pain and his request to go to the emergency room. The plaintiff also states that Cox did nothing more than order him to continue his prescribed treatment plan. The plaintiff implies that Cox did not review the plaintiff's medical history

in making this determination; he says that the HSU nurse called Cox and told him the plaintiff was still in pain, and Cox responded by directing the continuation of the pills until he could see the dentist. An official violates an inmate's Eighth Amendment rights when they continue a course of treatment "known to be ineffective." Greeno, 414 F.3d at 655. The court is not saying that is what Cox did; it is saying only that the plaintiff has alleged sufficient facts to allow him to proceed on a deliberate indifference claim against Cox.

The plaintiff has *not* stated sufficient facts to allow him to proceed on a claim against the inmate complaint examiner Perttu. A complaint examiner can be liable for deliberate indifference to an inmate's serious medical needs if he fails to do his appointed tasks by, for instance, "routinely sen[ding] each grievance to the shredder without reading it" or "intervene[ing] to prevent the medical unit from delivering needed care might be thought liable." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (citations omitted). But "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007). The plaintiff states that on December 27, 2017, he filed an inmate complaint about the lack of medical care he received three days earlier. The plaintiff further alleges that Perttu dismissed his complaint after reviewing his medical records and finding that staff had not

ignored his claims of pain. That was a reasonable finding, given that Turon had prescribed medication on December 21, and that the plaintiff had seen the HSU nurse and that the nurse had spoken to Cox on December 24. The complaint examiner did the job that a complaint examiner is supposed to do— review the complaint, review the records and decide. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Perttu.

### III.  Motion to Appoint Counsel

The plaintiff has asked the court to appoint a lawyer to represent him. Dkt. No. 11. The motion gives five reasons why the court should appoint counsel—the plaintiff says that he is unable to afford counsel, that the issues involved in his case are complex, that he has "extremely limited" access to the law library, that he has written letters to three lawyers asking them to assist him (and that they have declined) and that he has limited legal knowledge. Id. at 1-2. In his brief in support of the motion, the plaintiff makes different allegations than the ones he made in the complaint. Dkt. No. 12. He says in the motion, for example, that he "was seen by nursing staff in the . . . (HSU) on multiple occasions." Id. at 2. He says that Cox recommended a stronger antibiotic for him. Id. He goes into more detail about why Perttu found that staff did not ignore the plaintiff's pain. Id. at 3.

Regarding his need for a lawyer, the plaintiff asserts first that the "sheer number of claims and defendants" makes the case "factually complex." Id. at 5. He says that it "will probably be necessary" for him to either present a medical

expert or cross-examine a medical expert. Id. at 5-6. He indicates that he is unable to "locate, identify, and interview" various witnesses that were present "when he complained of his severe tooth pain." Id. at 6. He contends that the case will require "considerable" discovery regarding "reports and statements about the incident and the plaintiff's medical history." Id. at 7. He anticipates that there will be conflicting testimony at trial, particularly that his testimony and Perttu's will be in direct conflict. Id. He reiterates that he is indigent, has no legal training (and, according to his declaration, has only a high school education, dkt. no. 13 at ¶5), and has access to the law library for only fifty minutes a week. Id. at 8. (He is limited to this amount of time because he works during other library periods. Dkt. No. 13 at ¶6.) He claims that "[t]he large number of defendants, some of whom are believed to be supervisory officials, presents complex legal issues of determining which defendants were sufficiently personally involved in the constitutional violations to be held liable." Id. He notes that he has asked for a jury trial, "which requires much greater legal skill than the plaintiff has or can develop." Id. at 9. Finally, he asserts his faith in the merits of his claims. Id.

The court has discretion in a civil case to recruit counsel to represent a litigant who is unable to afford one. Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). Once a plaintiff demonstrates he has made a reasonable attempt to secure counsel on his own, the court examines "whether

10

the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." <u>Navejar</u>, 718 F.3d at 696 (citing <u>Pruitt v. Mote</u>, 503 F.3d 647, 655 (7th Cir. 2007)). This inquiry focuses not only on a plaintiff's ability to try his case, but also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." <u>Id.</u>

Although the plaintiff did not attach to his motion any proof that he has written to three lawyers and been turned down, the court will take him at his word and find that he has satisfied the first <u>Pruitt</u> factor. But at this early stage of the case, the court does not agree with the plaintiff that the difficulty of the case, either factually or legally, exceeds his capacity as a layperson to coherently present it.

The court has seen many, many complaints and pleadings filed by inmate plaintiffs. So far, the plaintiff's filings are some of the most organized, clearly-articulated and coherent the court has seen. Th complaint is easy to understand; the plaintiff laid out the facts in chronological order, and in a concise but thorough manner. The facts aren't that complex—the plaintiff complains that he fractured a tooth and that the doctor who saw him and the doctor who received his complaint of continued pain were indifferent to his need. The facts cover a limited time—about two weeks.

Many of the plaintiff's arguments—that he will need to obtain a medical expert or question one, that he has asked for a jury trial, that there may be

11

conflicting testimony at trial—will certainly be relevant later in the case, if the plaintiff's claims survive summary judgment and the case gets to the trial stage. But that's a long way off. Right now, at the beginning of the case, the plaintiff does not need to retain experts, or cross-examine anyone.

The plaintiff expresses concerns about being able to collect discovery, identify the parties involved and investigate. The litigation process in federal court will help him with that. After the court issues this order, it will have the complaint served on Turon and Cox. They will then have a certain amount of time either to file a motion to dismiss the complaint, or to answer it. If the defendants file a motion to dismiss the complaint, the court will give the plaintiff an opportunity to oppose that request. If the defendants answer the complaint, the court will issue a scheduling order setting dates for completing discovery and filing dispositive motions.

During the discovery phase, the plaintiff will have the opportunity (the right, in fact) to serve the defendants with written questions (interrogatories), requests for admissions, and document requests asking the defendants to produce the documents he believes supports his version of the events. See Fed. R. Civ. P. 33, 34. The defendants will be required to provide the plaintiff with information and documents in response to those requests, as long as the requests aren't too broad, are reasonable and are relevant to his claims. Many incarcerated plaintiffs are able to obtain the discovery they need this way. And discovery doesn't require legal knowledge or visits to the law library—it requires

only that the plaintiff ask the defendants for the information and documents he needs to figure out whether anyone violated his rights, who violated his rights and how they did it.

The plaintiff worries that he gets only fifty minutes a week in the law library. The court notes, however, that his pleadings contain numerous citations to statutes and rules and case law. He seems to use his fifty minutes a week very effectively. The court already has noted that he won't need the law library to conduct discovery. The next step in the process which may require the plaintiff to do some legal research is the summary judgment stage, where the parties may file motions arguing that they are entitled to judgment under the applicable law. If at that time (several months from now) the plaintiff still has only fifty minutes a week of library time, he can renew his motion (or rearrange his work schedule).

As to the plaintiff's educational level, and lack of legal training, the court understands that it is hard for someone who is not a lawyer, does not have legal knowledge, is in prison, has no money and has a hard time getting access to a legal library to represent himself. Unfortunately, nearly all incarcerated plaintiffs are in this same situation, and nearly all of them would like the court to appoint a lawyer to represent them. There simply are not enough lawyers willing or able to represent every plaintiff who asks for one. And in this instance, the court has noted that this plaintiff appears to be very smart, very articulate and quite capable of presenting his case during the pretrial stages. If

circumstances change and the plaintiff believes that he can no longer adequately represent himself, he may renew his request for counsel.

## IV.  Motion for Default Judgment

Finally, the plaintiff has asked the court to enter default judgment against the defendants. Dkt. No. 14. He asserts that "[a] default has been entered against defendants Dr. Cox, Tobias Turon and J. Perttu for failure to answer or otherwise defend in the above-entitled matter." Id.

Federal Rule of Civil Procedure 55 lays out a two-step process for obtaining a default judgment. First, Rule 55(a) says that "[w]hen a party against whom a judgment . . . is sought has failed to plead or otherwise defendant, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." That part of the rule requires the plaintiff to ask the clerk of court to enter default. Once the clerk has entered the default, the second step is for the plaintiff to apply to the court for default judgment under Rule 55(b)(2).

The plaintiff is incorrect that a default has been entered in this case. First, he did not ask the clerk to enter default, and the clerk has not done so. Second, however, under the PLRA, the court is required to screen complaints to determine whether they state a claim, and against whom, before the court orders the complaint and the screening served on the identified defendants. The defendants in this case are not aware that they have been sued, because the court is only just now screening the plaintiff's complaint. As the court

14

indicated above, it will send the complaint and this order to Turon and Cox. At that point, they will know that the plaintiff has sued them, and they will have the opportunity either to move to dismiss the complaint or answer it.

The court does regret its delay in screening the plaintiff's complaint. The court has hundreds of civil cases (in addition to its criminal case load), and the district is short-handed. Currently, there are only three district court judges in a district where there are supposed to be four. This is no excuse, but it is the reason for why it has taken so long for the court to screen the complaint. It is the court's fault, not the defendants', that the defendants have not been served and have not had the opportunity to answer the compliant.

The court will deny the plaintiff's motion for default judgment.

**V.      Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 5.

The court **DISMISSES** J. Perttu as a defendant.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 11

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 14.

Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service

15

on defendants Turon and Cox. The court **ORDERS** defendants Turon and Cox to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from the plaintiff's institution trust account the $300 balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will **REFER** this case to Magistrate Judge William E. Duffin for all pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 20th day of September, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.