UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREGORY TUCKER,

        Plaintiff,

v.                                             Case No. 18-cv-1013-pp

BURTON COX,
and TOBIAS TURON,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 41), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30) AND DISMISSING CASE**

      Plaintiff Gregory Tucker, a Wisconsin inmate who is representing himself, is proceeding under 42 U.S.C §1983 on Eighth Amendment claims against a doctor and a dentist who treated him at Green Bay Correctional Institution. The parties filed cross motions for summary judgment. Dkt. Nos. 30, 41. The court will grant the defendants' motion and deny the plaintiff's motion.

**I.**     **Facts**

      A.     <u>Procedural Background</u>

      On July 2, 2018, the plaintiff filed a complaint under §1983, dkt. no. 1, and a motion to proceed without prepaying the filing fee, dkt. no. 2. The plaintiff also moved for appointment of counsel, dkt. no. 11, and default judgment, dkt. no. 14. On September 20, 2019, the court entered an order screening the complaint and permitting the plaintiff to proceed against defendants Burton Cox and Tobias Turon for alleged Eighth Amendment

violations. Dkt. No. at 6–8. The court did not allow the plaintiff to proceed on an Eighth Amendment claim against inmate complaint examiner J. Perttu. Id. at 8–9. The court also denied the plaintiff's motions to appoint counsel and for an entry of default judgment. Id. at 9–15.

After screening the complaint, the court referred the case to Magistrate Judge Duffin for pretrial case management. Dkt. No. 18. Judge Duffin entered a scheduling order instructing the parties to submit dispositive motions by April 22, 2020. Dkt. No. 23. The plaintiff requested additional time. Dkt. No. 28. Judge Duffin granted that request and extended the deadline for filnig dispositive motions to May 20, 2020. Dkt. No. 29. On that deadline, the defendants filed a motion for summary judgment but no brief in support of the motion. Dkt. No. 30. The same day, the plaintiff requested a second extension of time to submit his own motion for summary judgment. Dkt. No. 35. On May 21, 2020, Judge Duffin ordered the defendants to file their brief in support of their motion for summary judgment within one week. Dkt. No. 36. He also granted the plaintiff's request for additional time to file his motion for summary judgment, extending the plaintiff's deadline to June 22, 2020. Id. The defendants filed their brief by the deadline Judge Duffin set. Dkt. No. 37. On June 19, 2020, the court received the plaintiff's motion for summary judgment and his supporting materials. Dkt. No. 41. Once briefing had concluded, the case was returned to this court for ruling on the summary judgment motions.

B.  Factual Background[1]

The plaintiff has been an inmate at Green Bay since April 4, 2017. Dkt. No. 31 at ¶1. Defendant Dr. Turon has worked as a dentist for the Wisconsin Department of Corrections since 2007. Id., ¶2. He worked full-time through 2015 and part-time from 2015 through 2018. Id. He has been on limited-term employment since 2018 and works at Green Bay one or two days a week. Id., ¶¶2–3. Defendant Dr. Cox worked as a full-time physician at the Prairie du Chien Correctional Institution and the Wisconsin Secure Program Facility until his retirement on February 15, 2019. Id, ¶4. He also worked as an on-call physician at other institutions, including Green Bay, where he would receive approximately 100 calls per shift. Id., ¶5.

1.  *December 21, 2017 Appointment with Dr. Turon*

On December 21, 2017, Dr. Turon examined the plaintiff for his complaint of pain that had developed two weeks earlier in tooth #19. Dkt. No. 31 at ¶¶6–7; Dkt. No. 32-1 at 1, 8. Dr. Turon checked the plaintiff's bite and noted a "high/heavy occlusion with the opposing molar (#14)," which means the plaintiff had "a heavy bite" on that tooth that could become painful over time. Dkt. No. 31 at ¶8. Dr. Turon adjusted the plaintiff's bite but noted

---

[1] The plaintiff did not respond to the defendants' proposed findings of fact. Dkt. No. 31. He submitted his own proposed findings of fact, dkt no. 44, to which the defendants have responded, dkt. no. 46. The court will consider each party's proposed facts only to the extent they are supported by evidence in the record and will deem admitted any facts that a party has not properly contested. See Fed. R. Civ. P. 56(c)(1); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(4); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

3

no swelling, and the plaintiff did not report pain when eating or in response to heat or cold. Id. at ¶¶8, 10. Nor did Dr. Turon note any visual evidence of a tooth fracture, but he states that fractures often are not visible. Id. at ¶¶9–10. He advised the plaintiff that, based on his reported symptoms, he "may have [a] fractured tooth" that was not yet visible. Id. at ¶¶9, 11; Dkt. No. 32-1 at 8.

Dr. Turon did not extract the plaintiff's tooth because it was not obviously fractured, but he advised the plaintiff that he might need to extract the tooth if the plaintiff's symptoms persisted or worsened. Dkt. No. 31 at ¶¶12–13; Dkt. No. 32-1 at 8. He prescribed Naproxen for pain and Amoxicillin (an antibiotic) for any possible, developing infection. Dkt. No. 31 at ¶¶14–15; Dkt. No. 32-1 at 8. Dr. Turon explained that infections can take time to develop, so he prescribed antibiotics "as a first course of treatment." Dkt. No. 33 at ¶10. Dr. Turon did not work at Green Bay from December 22, 2017 through January 1, 2018. Dkt. No. 31 at ¶17. Medical staff at Green Bay would triage and treat any dental emergency during that time. Id. at ¶18.

        2.     *December 24, 2017 Appointment with Nurse Malsteen and Dr. Cox*

On December 24, 2017, Registered Nurse Malsteen (who is not a defendant) saw the plaintiff in response to a request for health services. Dkt. No. 31 at ¶19; Dkt. No. 32-1 at 26. Nurse Malsteen's report from that day stated that the plaintiff reported "dental pain" and had a "possible fractured tooth." Dkt. No. 32-1 at 25. The plaintiff stated that the tooth Dr. Turon had treated three days earlier (tooth #19) was feeling better, but that he felt throbbing pain in the tooth behind it—tooth #18. Dkt. No. 31 at ¶20; Dkt. No.

4

32-1 at 25. Nurse Malsteen noted possible "slight swelling in/over left cheekbone" but no swelling in the plaintiff's neck. Dkt. No. 32-1 at 25. Nor did she observe any redness, swelling or damage around the plaintiff's teeth. Id. at 26. The plaintiff told Nurse Malsteen that he had been unable to eat for two days and that the Naproxen Dr. Turon prescribed did not give him any relief. Id.

Nurse Malsteen called Dr. Cox, who was the on-call doctor that day. Dkt. No. 31 at ¶21; Dkt. No. 32-1 at 26. Dr. Cox determined that because the plaintiff had seen a dentist only three days earlier, his symptoms "were not emergent" and did not require further treatment. Dkt. No. 31 at ¶22; Dkt. No. 34, ¶11. Nonetheless, Dr. Cox discontinued the Amoxicillin but prescribed Clindamycin, which he stated "should be a more potent antibiotic," because the plaintiff was not responding to Amoxicillin. Dkt. No. 31 at ¶23; Dkt. No. 32-1 at 1; Dkt. No. 34 at ¶11. He also prescribed Acidophilus to assist with the plaintiff's on-going tooth issues. Dkt. No. 31 at ¶23; Dkt. No. 32-1 at 1; Dkt. No. 34 at ¶11. Dr. Cox stated that dental pain "is not an emergency situation," so he does not prescribe opioids to on-call patients or send them to the emergency room for treatment. Dkt. No. 31 at ¶24; Dkt. No. 34 at ¶12. He stated that his treatment was in line with Division of Adult Institutions ("DAI") Policy 500.30.11. Dkt. No. 31 at ¶25; Dkt. No. 34 at ¶13; Dkt. No. 34-1.

Nurse Malsteen scheduled the plaintiff for a follow-up two days later and instructed him to contact the Health Services Unit if his pain worsened before then. Dkt. No. 32-1 at 26. The plaintiff states that he asked Nurse Malsteen to

5

send him to the emergency room for treatment. Dkt. No. 1 at 2; Dkt. No. 43 at ¶7. The plaintiff's medical records from December 24, 2017 do not mention this request. Dkt. No. 32-1 at 1, 25–26. The plaintiff states he "can only assume" that Nurse Malsteen told Dr. Cox that the plaintiff asked to be sent to the emergency room because the call to Dr. Cox "took place away from [him]." Dkt. No. 43 at ¶8.

### 3. *December 26, 2017 Follow-Up*

The plaintiff's medical records show that a registered nurse saw him on December 26, 2017 for his continuing complaints of tooth pain. Dkt. No. 32-1 at 24. The plaintiff told the registered nurse that the Naproxen was not helping his pain. Id. The nurse noted no swelling or redness at the plaintiff's gumline or in his neck. Id. The plaintiff was able to talk, smile and stick out his tongue. Id. The nurse told the plaintiff to continue taking his medications, including Naproxen, until the dentist was available to see him. Id. The notes state that the plaintiff was "unhappy, but versed understanding." Id.

### 4. *December 28, 2017 Treatment*

On December 27, 2017, the plaintiff complained of pain in teeth #18 and #19. Dkt. No. 31 at ¶26; Dkt. No. 32-1 at 8, 19. No dentist was available, but the next day nursing staff consulted a dental hygienist about the plaintiff's complaint. Dkt. No. 31 at ¶26; Dkt. No. 32-1 at 8. The hygienist took an x-ray of the plaintiff's teeth; the plaintiff showed no distress and made no complaints of pain from biting down on the tab during the x-ray. Dkt. No. 31 at ¶27; Dkt. No. 32-1 at 8; Dkt. No. 32-2 at 2. The defendants note that hairline fractures

6

and infected teeth are not always visible on an x-ray. Dkt. No. 31 at ¶28. The hygienist advised the plaintiff to continue taking his medications and forwarded his chart to Dr. Turon for further review when he returned to the prison. Id. at ¶29; Dkt. No. 32-1 at 8; Dkt. No. 32-2 at 2.

    5.  *January 2, 2018 Appointment with Dr. Turon*

Dr. Turon was back at the prison on January 2, 2018 and he saw the plaintiff for complaints of pain and an inability to bite down. Dkt. No. 31 at ¶30; Dkt. No. 32-1 at 5. The plaintiff pointed to tooth #19 as the source of his pain but did not mention whether the tooth behind it (tooth #18) also hurt. Dkt. No. 31 at ¶30; Dkt. No. 33 at ¶14. The plaintiff did not state in his declaration whether he complained about tooth #18 during this appointment. Dkt. No. 43. The plaintiff told Dr. Turon he wanted to save the tooth if possible, so Dr. Turon performed a filling on the tooth and advised the plaintiff it would have to be extracted if his symptoms persisted. Dkt. No. 31 at ¶31; Dkt. No. 43 at ¶14. The filling resolved the plaintiff's symptoms, and no extraction was needed. Dkt. No. 31 at ¶31; Dkt. No. 33 at ¶14.

    6.  *Continued Treatment and Eventual Extraction*

On January 7, 2018, the plaintiff submitted a request for dental services, stating that he had "pain in the tooth behind" the one Dr. Turon "fixed" (tooth #18) when he bit down. Dkt. No. 31 at ¶32; Dkt. No. 32-1 at 18. Dr. Turon responded two days later and placed the plaintiff on the "essential" wait list for an exam. Dkt. No. 31 at ¶33; Dkt. No. 32-1 at 18. "Essential" dental conditions "are chronic, asymptomatic, and which if not completed within 6-8 weeks could

result in an acute episode." Dkt. No. 33-1 at 2. Examples of "essential" dental conditions include "advanced caries [tooth decay], teeth with hopeless prognosis, infected teeth, and care for inmate patients which is relevant to their chronic medical conditions." Id. Because of the high inmate demand for dental treatment, the plaintiff was scheduled for the next available appointment. Dkt. No. 31 at ¶34; Dkt. No. 33, ¶16. Under DAI Policy 500.40.02, essential dental needs, such as the plaintiff's, must be scheduled within eight weeks. Dkt. No. 33-1 at 6.

On January 24, 2018, the plaintiff submitted another request for dental services stating that his pain had increased and "[was] now in the tooth that was fixed as well." Dkt. No. 31 at ¶35; Dkt. No. 32-1 at 17. Two days later Dr. Domrosi (who is not a defendant) responded to the plaintiff's request and scheduled him for an emergency visit and extraction. Dkt. No. 31 at ¶36; Dkt. No. 32-1 at 17. The plaintiff consented to the extraction, which Dr. Domrosi performed because an abscess (irreversible pulpitis) had developed in tooth #18 despite the antibiotics. Dkt. No. 31 at ¶¶36–37; Dkt. No. 32-1 at 7, 20; Dkt. No. 44 at ¶23.

DAI Policy 500.40.02 defines a "dental emergency" as "a problem causing a life-threatening condition and requiring immediate care." Dkt. No. 31 at ¶39; Dkt. No. 33-1 at 1. Examples include "uncontrolled bleeding, allergic reactions/shock, swelling or fractures causing impaired breathing, high fever from dental infection, or serious trauma." Dkt. No. 31 at ¶39; Dkt. No. 33-1 at 1. Because the plaintiff did not have any of those symptoms, Dr. Turon did not

provide emergency treatment and treated the plaintiff's non-emergent issues as provided under DAI Policy 500.40.02. Dkt. No. 31 at ¶¶39–40; Dkt. No. 33 at ¶17.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. "[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010).

To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

9

B.  Eighth Amendment Claims

The court reviews the plaintiff's claim regarding the denial of proper dental care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. The defendants do not dispute that the plaintiff suffered from an objectively serious medical condition. The question for purposes of this decision is whether the defendants were aware of that serious condition but exhibited deliberate indifference to it.

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). Medical malpractice or the plaintiff's disagreement with the doctors' medical judgment are not enough to

prove a constitutional violation. See Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citing Estelle, 429 U.S. at 106). But neither may prison officials "doggedly persist[] in a course of treatment known to be ineffective." Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005). In short, the plaintiff must show that the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." Id. at 654 (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

The plaintiff asserts that the delay in receiving dental care caused him injury. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The duration of delay that is tolerable "depends on the seriousness of the condition and the ease of providing treatment." Id. (quoting McGowan, 612 F.3d at 640).

1. *Dr. Turon*

It is undisputed that at the December 21, 2017 appointment, Dr. Turon told the plaintiff only that tooth #19 *might* be fractured. There was no visual evidence of a fracture at that time, and Dr. Turon states that often fractures are not visible at first. Because Turon could not confirm that the plaintiff's tooth was fractured, he prescribed interim treatment for the plaintiff's pain and antibiotics to fend off any possible infection, but did not extract the tooth. Dr. Turon was not deliberately indifferent to the plaintiff's complaints on that date;

11

far from disregarding the plaintiff's complaints, he prescribed treatment both for the plaintiff's pain and for infection.

Dr. Turon was not at the prison again until January 2, 2018. Under the law, he cannot be held personally responsible for the treatment the plaintiff received between December 22, 2017 and January 1, 2018 because he was not personally involved in that treatment. See Brownlow v. Van Natta, 2 F. App'x 516, 518 (7th Cir. 2001) (citing Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000) and Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996)) (explaining that "liability under §1983 must be predicated upon personal responsibility").

When Dr. Turon returned to the prison on January 2, 2018, he again examined the plaintiff for the continued pain in tooth #19. There is no evidence that the plaintiff complained about tooth #18 during this examination. The plaintiff stated he wanted to try and keep his tooth and opted not to have Dr. Turon extract it. Dr. Turon complied with this request and performed a filling on the plaintiff's tooth #19. That treatment saved the tooth from being extracted. Again, far from ignoring or disregarding the plaintiff's complaints regarding his condition, Turon treated the condition—apparently successfully. That does not constitute deliberate indifference.

A week later, the plaintiff requested treatment for tooth #18. This was the first time the plaintiff informed Dr. Turon that he was having pain in tooth #18, and Dr. Turon had not treated tooth #18 during the examinations on December 21, 2017 and January 2, 2018 (he had not had reason to). Dr. Turon

12

responded to the plaintiff's request and placed him on the "essential" waiting list for treatment. Both defendants state that dental pain is not an emergency, so the plaintiff had to wait for an open appointment slot to receive treatment for his pain in tooth #18. DAI Policy 500.40.02 requires treatment of "essential" dental conditions within eight weeks. The plaintiff does not contest that this is the policy. Rather, he believes that his condition warranted getting an appointment more quickly. "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Drinkwater v. Larson, 794 F.. App'x 523, 527 (7th Cir. 2020) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Even if Dr. Turon was wrong—even if he had mis-diagnosed the plaintiff's condition as non-emergent—that would not constitute deliberate indifference. "[M]edical professionals receive significant deference when their judgments encounter challenges under the Eighth Amendment." Knight v. Grossman, 942 F.3d 336, 341 (7th Cir. 2019) (citing Wilson v. Wexford Health Servs., Inc., 932 F.3d 513, 519 (7th Cir. 2019)). Dr. Turon placed the plaintiff on the "essential" waiting list not because he disregarded the plaintiff's condition but because he concluded, in his medical judgment, that the plaintiff's condition was not an emergency. That exercise of judgment does not constitute deliberate indifference.

When the plaintiff's condition worsened, he again requested treatment and stated that his pain was more severe. Because the plaintiff's condition had

progressed, Dr. Domrosi scheduled an emergency appointment two days later. During the appointment Dr. Domrosi extracted tooth #18 because of an abscess that had developed. The plaintiff points to Dr. Domrosi's treatment and extraction of the tooth as evidence that Dr. Turon's earlier treatment was deficient. Dkt. No. 42 at 8–9. Although the plaintiff was seen for pain in tooth #18 during Dr. Turon's absence from the prison, he did not report pain in tooth #18 to Dr. Turon until January 7, 2018. As the court already has indicated, Dr. Turon did not believe that the tooth constituted an emergency at that point. The fact that another doctor reached a different conclusion does not convert Dr. Turon's exercise of judgment into deliberate indifference; "evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." Knight, 942 F.3d at 341 (quoting Petties, 836 F.3d at 729).

The plaintiff may believe prompt treatment in response to his January 7, 2018 request could have saved tooth #18 from extraction, but he has provided no evidence to support that belief. Even if he had, the court already has explained that a misdiagnosis does not constitute deliberate indifference. As a prisoner, the plaintiff was "not entitled to demand specific care," nor was he "entitled to the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). He was entitled "to reasonable measures to meet a substantial risk of serious harm" to him. Id. Dr. Turon responded to the plaintiff's medical needs for both teeth. He did not ignore the plaintiff's complaints. He was not

14

deliberately indifferent to those serious medical needs. Dr. Turon is entitled to judgment as a matter of law.

       2.    *Dr. Cox*

Dr. Cox saw the plaintiff only once, on December 24, 2017. The plaintiff had informed Nurse Malsteen that the pain in tooth #19 had improved after Dr. Turon's examination and treatment but that he now had pain in tooth #18, the tooth behind tooth #19. Dr. Cox attempted to treat the plaintiff's new pain in tooth #18. He prescribed a more potent antibiotic to treat the plaintiff's condition and continued the pain medication Dr. Turon prescribed, which had provided the plaintiff pain relief in tooth #19. The plaintiff has not presented any evidence showing what more Dr. Cox should or could have done as the on-call physician without a dentist available at Green Bay.

The plaintiff asserts that he informed Nurse Malsteen that the Naproxen Dr. Turon prescribed was not helping, and he argues that Dr. Cox should have provided stronger medication. Dr. Cox states that he does not prescribe opioids to treat dental pain because it is not an emergent condition. Dr. Cox's decision not to prescribe opioids was an exercise of his medical judgment. "The standard is not whether a reasonable medical professional would have made the same choice as Dr. [Cox], but instead whether 'no minimally competent professional' would have done so." Knight, 942 F.3d at 341 (quoting Wilson, 932 F.3d at 519). The plaintiff also asserts that he asked Nurse Malsteen to send him to the emergency room, but there is no evidence she relayed that request to Dr. Cox. Even if she had, there is no evidence the plaintiff required

15

emergency treatment for the pain. The plaintiff presents no evidence to suggest that Dr. Cox's medical judgment was suspect or that failure to give him opioids or send him to the emergency room was such deficient care that no minimally competent professional would have made the same decisions. That the plaintiff wanted different or more robust treatment does not prove deliberate indifference; it shows only disagreement with Dr. Cox's course of treatment. As the court has discussed, that disagreement does not constitute an Eighth Amendment violation. See Estelle, 429 U.S. at 107; Snipes, 95 F.3d at 592. Nor does the Eighth Amendment require that Dr. Cox give the plaintiff opioids for his pain or send him to a hospital for his non-emergent condition. See Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)) (explaining that "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care'").

Dr. Cox is entitled to summary judgment.

### C. Qualified Immunity

Because the court is granting summary judgment in favor of the defendants on the merits, the court need not address the defendants' argument for qualified immunity. Sierra-Lopez v. Cty., No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996), and Antepenko v. Domrois, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

D.  The Plaintiff's Motion

The court has concluded that there are no genuine disputes as to any material facts and that the defendants are entitled to judgment as a matter of law. The court will deny the plaintiff's motion for summary judgment.

## III. Conclusion

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 41.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 49.

The court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil

17

Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th day of October, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**